Good morning. Donald Falk for Appellant Michael Riggs. The issue in this appeal is whether Mr. Riggs is entitled to a meaningful remedy for the ineffective assistance of counsel that caused him to forego a five-year plea offer for his shoplifting conviction and instead receive a 25-year-to-life sentence. There's no dispute at this stage that the assistance he received was constitutionally ineffective. There's no dispute at this stage that he would have taken, accepted the plea offer. Counsel, what is our standard of review regarding the remedy? Well, the standard of review regarding remedy is abuse of discretion. However, there are legal standards that guide the exercise of that discretion, including precedence of this Court. So your argument is the district court abused its discretion in fashioning the remedy for the ineffective assistance of counsel claim? Correct, because he followed incorrect legal standards. I think it was a she. I'm sorry. Judge Marshall. I apologize, Your Honor. She, Judge Marshall, in adopting the report and recommendation followed the incorrect legal analysis to guide the discretion. And because the incorrect legal analysis was followed and because following the correct analysis, we submit compelled to different results. What's your best case authority for the proposition that Judge Marshall abused her discretion in fashioning this remedy? Well, I guess our best case authority that the discretion was abused was what would be the – I certainly have to concede that there are no cases absolutely directly on point here and that we have to draw. Well, what's your best case? Our best case, I think, is probably Nunez v. Mueller, the recent case of this Court, and Blaylock, United States v. Blaylock, the earlier case of this Court. Is this the habeas case that we're dealing with? Excuse me? Is this the habeas case we're dealing with? This is the habeas case. Well, Blaylock's a direct appeal case, so that's not going to help you very much. Correct. Blaylock is a direct appeal case, but the constitutional violation is the same, and I believe the similar principles govern it. Well, but when we're dealing with federal cases, we have a different supervisorial approach to cases coming directly out of the district courts than we do out of cases coming out of state courts. That's the first problem with Blaylock. How do you get around Mabry? Well, Mabry, I don't know that there's anything that to be gotten around, Your Honor. It wasn't a Sixth Amendment violation. It was an attempt to enforce a plea bargain that had been withdrawn, and then there was a subsequent plea, and the Court said quite strongly that once you have a subsequent plea that was competently counseled, and a couple of times in Mabry, they stressed the point that the plea had to be competently counseled. But once you have a subsequent competently counseled plea, that wipes away all constitutional violations that came before. But doesn't Mabry also say that specific performance is not the only remedy? It is not the only remedy. It may not be the only remedy. Why can it be an abuse of discretion in a case like this where the offer was mistaken to say that it's the only remedy and that there was necessarily an abuse of discretion? You're telling us that Judge Marshall had no options other than to grant specific performance. Is that what you're telling us? Under the – under this – Because the law says you have no discretion. On one hand, you have discretion, but you're saying the law says you don't have discretion. Well, Your Honor, I'm saying she had no option to grant a remedy. No discretion. I am saying that under this, she has no option to grant a remedy that does not provide any meaningful relief for the constitutional violation. Well, then how can it be an abuse of discretion standard that we use to review it? Well, if there was no discretion. Well, Your Honor, abuse of discretion is commonly found when an incorrect legal analysis is applied. And that – when there is a legal error, and here the incorrect legal – an incorrect legal analysis was applied, including on the mistake ground. The exception to reinstatement of the plea offer and restoring to the defendant the position he was in or would have been in at the time of the constitutional violation depends on a showing that the plea offer – the showing by that prosecution that the plea offer would have been withdrawn or modified before expiration. There was no such showing here. There was – there was evidence that the prosecutor did not understand what the California Supreme Court later held was the plain and unambiguous meaning of the three-strike statute. And that's quite – and, you know, we have to accept that at face value, that she didn't understand it. But she did not say that the offer would not have been made, that the charging decision would have been different. And, in fact, there's uncontradicted evidence in the record that in cases of this kind where a third strike or the potential third strike was a relatively minor crime here, petty theft, that it was common practice, perhaps as much as half of the cases in Riverside County were initially charged at the early disposition stage as one-strike cases and dealt with on that level. Now, once they got past the preliminary hearing, it was over, as it was in this case. And I think it speaks volumes that the – that the affidavit of the prosecutor does not say – it does say, from looking at my records, it appears that I did not understand that I could have brought this originally as a three-strike case. It does not say, had I understood, I would not have done so and would not have dealt the case on this – based on this record. She was fully aware of Mr. Riggs's criminal record. She was fully aware that he had four robbery convictions. She says so on her affidavit. She does not say that the result would have been different. And I think that is what distinguishes this case from some of the other cases that have come up in which relief has been more gauzy. Here, I think it's ironic that the State is arguing that it's an intrusion on federalism to issue a writ that would maintain the conviction, but at a different – at a different sentence, whereas it's saying it's perfectly all right with vacating the conviction altogether and retrying the case. Kennedy. You concede that Nunez is not on all fours and is not absolutely controlling. Why not? Why isn't it? What's the difference? Well, the only – it seems to me that the only difference with Nunez on the power issue, I think it's absolutely controlling. I – there – as I recall, Nunez, there was not an argument that the prosecutor at the initial stage had mistaken the law. Our contention is, even based on the findings of the district judge, which only say that – which basically reproduced what the affidavit said, that yes, of course, the offer was based on the understanding of the law at the time, but even based on those findings, there is no showing that the offer would not have been made, that it would not have been charged, that this petty theft would not have been charged as a one-strike felony in the first instance, and dealt as it was. And without that showing, we submit that the – because the ordinary remedy is specific performance of a plea offer, we submit that's completely appropriate in this case, and it was indeed an abuse of discretion not to do – not to enter that relief. There isn't any record which shows that the prosecutor knew about the effect of the Cable v. Tompkins case in the 26 days between the time it came down and the preliminary hearing? There is no evidence in the record on that. In your position, she's charged with knowing that she could have – Well, yes, it's our position that she's – well, let me back up a minute. I mean, I think she is charged with knowledge. Our position is that it is the State's burden to show that had she known the initial charging decision and plea offer would have been different. Yes, I think it's completely fair in a case like this where no binding appellate decision had come down before, but the California Supreme Court following, I think four or five, I may be exaggerating a little bit, but more than one appellate decision said in a rather short part of the Fuhrman opinion that this is on its face. Of course it's a – of course it permits this kind of charging. It's not the prosecutor being taken to task for her mistake, though I think that is entirely fair in this situation. What we – what our argument is is there has been no showing that the offer and the had she been aware. She doesn't say that. She could easily have said that. And there is no showing that there is some – the – some grave danger to the – or danger of any kind to the community, that the community interest is somehow impaired by this because the prosecutor knew his full criminal history and based on who he was and what he had done, was willing to deal this at five years. So you want us to take it back to that period of time between October 4th and October 30th, 1919? The relevant period in this case is when the plea offer was pending. Otherwise, without – that's when the violation occurred. It didn't occur before the plea offer was pending and it did not occur afterwards. It occurred while the plea offer was pending. That's the relevant period. So exactly what do you – do you want us to do and where do you want to end up as a result of what you want us to do? Well, I guess we have – we have two alternatives and it depends – and I think there's support in this Court's cases for either one. Because of the unique situation here, and I would emphasize – I would emphasize – I shouldn't say it's unique, but there's a unique amount of clarity here. Many of these cases, the plea bargain is an offer to recommend a department of justice. You're beginning to stray, though. I'm sorry. Where do you want us to end? I apologize, Your Honor. I think there are two – two acceptable courses here that are rooted in this Court's precedent. One would be the type of decree that was discussed in Nunez that would be a typical habeas decree releasing within X period unless the plea offer is reinstated. The second – So unless the plea offer is reinstated. You want somehow us to order the plea offer reinstated, which would then allow him to accept or reject it. Which would allow him to accept or reject, and he's, you know, on the record as being willing to accept. I believe that this case – Well, but we don't know that. I mean, he'd have to make a new decision. Yes. Okay. I mean, I think that's an appropriate remedy. I do think because of his demonstration – In order for the case to get into some kind of a position in State court where the plea offer is outstanding and he could accept it or reject it. Number two, you said there was another one? Well, number two, I believe there is support in this Court's cases, and including in State habeas cases, Carter v. McCarthy being one of them and Brown v. Poole being another, where rather than simply reinstate – when the end result is clear, when the – as in this case where he has – Do you want us to enter a guilty plea for him? No, he's already convicted, Your Honor. It's just a question of ordering his release based on the plea. He's already been convicted. There's no – there's no – I don't believe there's a need to make this conviction. Well, that's why I'm asking you exactly what you want us to do, because you said you want us to reinstate the plea offer and get rid of – and do what else? The second one is you just want us to let him go because he's done more time than the plea. The second one is – and under Carter v. McCarthy and Brown v. Poole, if the appropriate remedy, more directly under Brown, would be enforcement, because he has done – as Judge Baez said, because he has done more time than the plea, it seems to us, and it seemed at least on one or two occasions, so this Court should be unnecessarily complicated to bounce it back and forth between the courts and see what happens when the – when the clear result should be ordering his release, basically, unless he turns down the plea offer. Counsel, Brown was an executed plea agreement, wasn't it? The judge had accepted the plea agreement, and it was being enforced because it had been accepted by all parties. Isn't that a little different than what we have here? Yes, Your Honor. There are some differences. I would certainly – I would certainly concede this. It seems to me that it still – it still is governed by the principle that Brown adopted, that when the end result is clear, this Court would have the power to enter that type of decree that reaches – that basically cuts to the chase. I recognize the federalism concerns. I don't think – I think this Court has overridden those concerns in the past because in a habeas corpus case, applying a federal constitutional violation, that's what habeas courts do. There is – there is lots of deference to the State system in the exhaustion setting and in the substantive review, but the remedial – the remedial discretion has been quite broad. We do not, and I think – I hope we made this clear. But how do we get around the fact that the district court exercise is discretion and you want us to disregard that? Well, Your Honor, we – I – we're not asking it to be disregarded. We think it was governed by incorrect legal principles and as a consequence reached the wrong result. What do you do with the district court's observation that California law permits the prosecution to withdraw a plea offer even after the defendant's acceptance of the offer in the absence of any detrimental reliance by the defendant? So the district court seems to have been saying even if the defendant had accepted that mistaken offer, the prosecution could have acted to withdraw it short of any detrimental reliance. But there was no showing in this case that that's what would have happened. In fact, these offers were accepted and executed with some frequency. Yeah, but I mean, I think the Court was talking here about the remedy and pointing out that there were all kinds of possibilities that were simply not – you couldn't tell what would have happened and that's why a good remedy would have been to do exactly what the district court did. Well, I disagree, Your Honor. The remedy that the district court entered is something in which he concedes that you can't tell what's going to happen. In fact, you have no idea what's going to happen. It may be – I think if anything, the uncertainty in this case where the time in the of the type in Carter v. McCarthy, but the fact that there may be some uncertainty as to how things go forward does not weigh against giving meaningful relief for the constitutional violation that occurred. Your time has expired. We'll give you some time to respond. We'll hear from the other side. Good morning, Your Honors. May it please the Court. Thank you, Your Honor. Deputy Attorney General Nikki Schaefer appearing on behalf of Appellee. Your Honors, Judge Marshall properly exercised her discretion in concluding that Mr. Riggs, the petitioner, is not entitled to specific performance of the original mistaken plea offer. Specific performance would be inappropriate here not only because Mr. Riggs rejected the offer at the time that it was made, but also because the offer was erroneously based on the original charging prosecutor's temporary misunderstanding of California law at that time. Kind of temporary insanity. A temporary condition vanished on October 4th, 1995, when Capos came back. Well, Your Honor, it may have vanished. It may have been the advance sheets, but we know that all Deputy Attorney Generals read all the advance sheets the minute they come out, right? Well, Deputy Attorney Generals do, Your Honor, but the DA's office is a different story. No, they should read them, Your Honor. They certainly should be reading them if they're not, Your Honor. Some of my colleagues are saying they resent that remark, but they don't deny it. We'll plead guilty if you give us a county list. I'll withdraw it, Your Honor. No, Your Honor, it's certainly true. There was no mistake between October 4th and October 30th. The plea was open. The preliminary hearing hadn't taken place. Well, Your Honor, there was not a mistake. There was a mistake as to the charging prosecutor, though, because she was unfamiliar with the statute of the law. But she had the knowledge of the law. Well, she said you could charge three strikes. Yes. You know that. Yes, Your Honor. She was charged with the knowledge of the law for 26 days there. She does not withdraw the offer. She did not say she didn't read Congress, I guess, right? But does it make any difference under plea law? Isn't she required to know the law and to apply the law so that there is no ineffective assistance of counsel? Isn't that also a requirement of the prosecution? Well, the standards are different as far as what standards govern ineffective assistance of counsel findings versus what should govern the prosecutor in this case. There's certainly no dispute here that they both made an error, Your Honor. I mean, defense counsel made an error. But on law, the prosecutor knows Compost from the 4th to the 30th of October 1995 and does not withdraw the plea. Your Honor, I don't think. If we go back to October 4th and say that's the status quo, what do you want to do, Mr. Riggs? Do you want to plead guilty or not? Isn't that the situation we should go back to? Well, Your Honor, we can go back in fact to that situation and look at it and see that as soon as the mistake was discovered by the prosecutor, the correct charges were in fact filed in this case. And we're filed between the 4th and the 30th of October of 1995, right? No, but we know the plea offer was off the table as of October 30th, 1995. On October 30th. But for those 26 days, if we go back to status quo, I think that's what Mr. Falk would like, we go back to October 4th and say we roll the clock back through the magic of the appellate court system until October 4th, 1995. And at that point, the prosecution is charged with knowledge of Counsel. You can charge three strikes. You know that you can. You haven't charged three strikes. Let him plead to five years. And if Mr. Riggs says I plead guilty to five years, that's the deal. Go ahead, Your Honor. Well, Your Honor, first of all, if I may point out, Mr. Riggs did not even receive appointed counsel until I believe it was October 18th. So I know the court is operating by the date of when Campos came out. Okay. So the plea offer was only on the table for less than two weeks in this case. No, I understand. Well, but as the district court pointed out in its findings, Your Honor, there certainly is no showing in this case that that would have been sufficient time for Mr. Riggs, had he accepted the offer, to have it entered and approved by the court. And it is entirely possible, as the district court's findings note, that the offer would have been withdrawn before it had been approved by the court. And California law does provide for that. The 28-day period without a probation report? No, Your Honor. The time that it would have taken for the parties to get a date before the court in order for the plea to be entered on the record. You think it would take 24 days to do that? Your Honor, it sometimes takes longer than that. But in this case, well, we know in this case, Your Honor, that Mr. Riggs rejected the plea, and it was not – But you stipulated that's based on a mistaken understanding of the law, right? We – yes. But the mistake was mutual, Your Honor. Until October 4th. Then it became unilateral, the defense only, because the prosecutor knew she was going to charge me strikes. But, Your Honor, you're speaking in an idealistic world, and I agree with you. She should have known, but she didn't know. No, she's charged by the law with knowledge. Well, and defense counsel – I'm not idealistic, I have to speak legalistically. Prosecutors tell defendants all the time the stake of the law is no excuse. Well – If we tell it to defendants, we should be able to tell it to prosecutors. But it seems incongruous to me, Your Honor, that the prosecution should be punished when the – But under Blaylock, the prosecution is not punished. The prosecution has an independent duty, I think, under Blaylock, to make sure that ineffective counsel does not harm the interests of the defendants. Your Honor, I find Blaylock to be factually distinguishable from these circumstances. There was no evidence in Blaylock – first of all, the plea was never communicated to the defendant in that case. This is a case where he rejected the plea, Your Honor, and there were a variety of reasons for why he did. So what's the difference? Well, it's – Not knowing about a plea offer and rejecting one based on a mistake. There was no mistake in Blaylock, Your Honor. There was no mistake by the prosecutor in Blaylock, Your Honor. The facts of that case are really different than what we're discussing here. Do you accept the proposition that Blaylock controls, even though that's a direct appeal? No, Your Honor. I don't think it does control, but it provides an analogy upon which Mr. Riggs is seeking to rely here, I guess I would say. Tell us about Nunez. What does Nunez deal with? What does it hold? And how do you think it applies in this case? I don't think it does apply, Your Honor. Again, the case is factually distinguishable for the same reasons Blaylock is. Again, in Nunez, the offer was, I believe, not adequately communicated to the defendant. I believe he was told it was a 22-year deal when, in fact, it was an 11-year deal. So – and also, and primarily, there was no prosecutorial error in that case. So factually, both Blaylock and Nunez are the same. Do you want us to write an opinion, basically, that says if the prosecutor screws up, the prosecutor is off the hook? No, Your Honor. I want you to write an opinion that says the district court did not abuse its discretion here. The other side says even though the standard of review is for an abuse of discretion, under the curious circumstances of this case, the law deprived the district court of any jurisdiction to do anything other than order some kind of specific performance. Well, Your Honor, I obviously can't tell this Court what to do, but I don't think there's any authority for making such a conclusion. I think that's – I don't think Nunez provides to this Court that authority. All right. If there's nothing that provides authority for it, what provides authority against it? The abuse of discretion. What case do you want us to read that says that the Court, under these circumstances, did have, under the law, discretion to order specific performance? Well, we don't believe that the Court did have discretion to order specific performance, Your Honor. But if the remedy was fashioned in the way the Nunez Court fashioned its remedy, of course, discretion would have existed. However, the Court did specifically consider that remedy, Your Honor, among other remedies that it considered and weighed quite thoughtfully, Your Honor, and found that in this case, under these unique factual circumstances, it would not be an appropriate remedy. There's certainly nothing to say that plea negotiations in this case will not be resumed, Your Honor, when the case – if the case is remanded for a new trial. A little triumph of hope over experience. I mean, take a look at these cases. This case. This man stole some vitamins and immediately confessed it and said he'd scrub the floor if they wouldn't prosecute him, right? How can you negotiate? What does he have to negotiate with? He didn't have any – He can't rat out somebody, can he? No, Your Honor, but he had nothing to bargain with to begin with, Your Honor. Well, then what are we talking about plea negotiations? Because there, in fact, were plea negotiations in this case. Because they thought they couldn't charge three strikes. Now they know they can charge three strikes. What has he got to negotiate? In fact, Your Honor, there were ongoing plea negotiations in this case before the report and recommendation issued, and as the – That's all in the background when people weren't really focusing on the situation. Now we know all the facts, right? Put yourself in Mr. Falk's position. What's your best bait for plea negotiation to a prosecutor? What do you have to negotiate with? Well, Your Honor, in fact, plea negotiations did occur here in the – No, no. After all the cards were on the table, there were plea negotiations in this case. Well, and what was the offer? Can you divulge that? I – should I? I brought up a subject as there were plea negotiations. What did you offer them? It's – Your Honor, it was the district attorney's office. It is not my office that issues these offers, but in fact, it's not a part of the record, but a 14-year offer was made to Mr. Riggs in this case. I wish he's done seven already. Well, there's the offer. Beats 25 to life. Do you have anything else? Your Honor, I had other remarks, but I think in our discussion I probably covered everything I have to say, so I would just close with thanking the Court and asking the Court to find that Judge Marshall did, in fact, not abuse her discretion in fashioning the remedy in this case. Thank you very much, Your Honors. Thank you. We'll give you a short time to respond if you'd care to do so, if you care to submit it on the record as it is. It's your choice. I'll take it down from that. I'll try to make it very brief, however. I'd just like to reiterate a couple of things. Again, on the standard of review, the legal analysis is clearly dictated, and the facts are undisputed or uncontradictive. So I think the finding of abuse of discretion is quite possible and appropriate here. I think there is no difference between communicating failure to communicating a plea and communicating it in an unconstitutionally ineffective manner. I think it's the same violation should have the same results. I think it's also important that the Supreme Court has said that the risk of ineffective assistance does lie on the prosecution. And to the extent that that's at issue here, I think it may, we don't think that's even necessary to reach that here. But to the extent that that comes into play, that in Kimmelman v. Morrison is the principle that is supposed to govern the closed cases. A couple of just very minor things. One, this Court asked our best authorities. I gave you the correct answer. But I also, it is my duty, I think, to tell the Court that we cited a case in our brief, the Timmons case, which in my opinion has been withdrawn and substituted with an unpublished decision. That was not a Sixth Amendment case. I'm aware of that case. I was on it. I'm well aware of it. You, Judge Trotter, are familiar with it. I have it right here. And probably know it as intimately as anyone. But I wanted to be certain that my duty of candor to the panel was defied with there. And finally, what was happening here, again, just to clarify the record, and I think this is clear from the findings, is that the prosecutor understood the facts, which is to say the fact that there were four robbery violations, four robbery convictions. Says she did not understand the law. We believe, we agree with Judge Bea that she should be charged with understanding what the California Supreme Court said was clear and unambiguous law. The defense attorney, Ms. Scalise, understood the law so far as the record shows, and that's what the findings said, but did not take it upon herself to discover the full breadth of Mr. Riggs's convictions, how many convictions there were. And that was, in fact, the basis of the ineffective assistance finding. If there are no further questions. No, but is it correct that there have been plea negotiations in this case, that he was offered 14 years? It is correct that there were plea negotiations in this case before the issuance of the report and recommendation. I do not recall what 14 years sounds close to the office. I'm not sending any messages one way or another, but would you like an additional 10 days to continue to explore that, or shall we submit the case and give you a decision? I think we would take 10 days. All right. If the State is willing to reopen negotiations. My only concern, Your Honor, and this is really, truly my only concern, though unless the opinion issued instantly, I suppose it wouldn't matter, is that communications with Mr. Riggs are sometimes not as quick as one would like them to be. But I think we would certainly be open to further negotiations. Does the State have any objection to that one way or another? We're not trying to force anything down anybody's throat, but when there are attempts to settle a case, we're not going to get in anybody's way either. Oh, of course not, Your Honor. Actually, I can speak to the District Attorney's Office from whence the offer came, but I can certainly contact the office today and indicate people's message. Your Honor, one point I would add, though, just to clarify, as long as we're going into extra record materials about plea offers, is that we were given under this case was briefly back in Superior Court. Right. And we had at which point we got a stay, and we were, as I recall, again, I didn't personally make the appearance myself, but as I recall, the District Attorney's Office indicated that there would be no negotiations. So shall we just submit it and decide it? I think it's probably, with this Court's statement today, I think it's probably, if Ms. Schaefer is amenable, I think it's probably worth another try. Your Honor, I wish I could take full responsibility for the ---- I understand that. We can defer submission for 10 days and allow you to tell us, and if nothing's going to happen, fine. If something is going to happen, fine, too. I mean, no pressure one way or the other. You want 10 days to look at it? I think that would be fine, Your Honor. I talked to the DA in charge of this case last week. I know he is going to be on vacation this week. That's my only concern, Your Honor. But I'll call his office today and see. We'll give you to the end of next week, then. And, seriously, I'm repeating myself for the third time. This is no pressure one way or another. We're not sending any signals, but if there's a possible resolution in the mix and you want to take advantage of it, so we'll defer it until the end of next week? Is that okay? That would be fine, Your Honor. If by chance negotiations are going hot and heavy, but communications are not going as hot and heavy as they might, it's not instantaneous, Mr. Riggs is not on the Internet and I can't call him, is there some way we could notify the court of that? I guess we could just file something with the clerk's office. Absolutely. File something in writing with the clerk's office letting us know exactly what's going on. And we'll defer submission for some time and we'll issue an order to that effect. Thank you. Thank you both. Submission in this case is deferred. We'll call Ruiz Morales versus Ashcroft.
judges: Trott, Rawlinson, Bea